Justin Pasquale, Esq.
Pasquale Law Firm
110 N. Ankeny Blvd., Ste. 200
Ankeny, IA 50023
justin@pasqualelaw.com
Tel: (515) 957-7175
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RETVRN, INC., a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS BLANDING, an individual,<br><br>Defendant. | **Case No.: 1:26-cv-01165**<br><br>**COMPLAINT AND DEMAND FOR A JURY TRIAL** |

Plaintiff RETVRN, Inc., by and through its attorney of record, hereby complains and alleges against Defendant Nicholas Blanding as follows:

## IDENTIFICATION OF THE PARTIES AND JURISDICTION

1. Plaintiff RETVRN, Inc., is a foreign corporation and citizen of Florida, as it is duly organized under the laws of Florida and maintains its principal place of business in Florida.

2. Defendant Nicholas Blanding is an individual and citizen of Colorado.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C.

§ 1332 (a) and (c) because the parties are citizens of different states, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c)(1).

## GENERAL ALLEGATIONS

5. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

6. In 2022, RETVRN CEO, Nicholas Stumphauzer, conceived of two novel and cutting-edge applications: *SHIFT* and ESC (escape)—the former completely removes all distracting apps from your smart phone or device, while the latter completely blocks all sexually explicit and/or pornographic materials.

7. Initially, RETVRN employed an overseas programmer to write code for and help develop Stumphauzer's inventions.

8. After about one year, the overseas programmer accepted a job with another company and amicably left RETVRN.

9. On or about February 9, 2024, RETVRN hired Defendant Blanding to build on and add to, where necessary, the existing code, so that RETVRN could meet its target release dates. Specifically, RETVRN hired Blanding to write and develop code *exclusively* for RETVRN, and in particular, for its *SHIFT* and ESC projects. Blanding, in other words, was hired to replace the outgoing programmer/developer and was stepping into an existing

project—he was not coming into the project with his own, preexisting intellectual property, nor was he starting from square one.

10. RETVRN hired Blanding pursuant to a written employment agreement (Agreement). **Exhibit A.** Under that Agreement, Blanding was given a monthly salary of $5,000 (which was paid every other week), stock options, and the opportunity for advancement based on his performance. *Id.*

11. The Agreement also required Blanding to work 40 hours per week; complete tasks assigned by CEO Stumphauzer; and attend meetings with CEO Stumphauzer, wherein Blanding demonstrated his progress and had his work product analyzed and critiqued. Furthermore, Blanding was obligated to draft work-related reports detailing his progress and goals. *Id.*

12. RETVRN, however, had absolute and sole discretion to determine whether tasks, assignments, or the like had been completed satisfactorily. Thus, RETVRN exercised complete control over the mode and/or details of Blanding's work.

13. Upon information and belief, in or about February 2025, Defendant Blanding surreptitiously began withholding substantial and integral portions of code from RETVRN's corporate Github and storing it on his personal laptop—this was done intentionally, maliciously, and without RETVRN's authorization.

14. Around the same time (i.e., early 2025), Blanding attempted to

renegotiate his position with RETVRN, including demanding a 30 percent share of the corporation. CEO Stumphauzer considered the proposal, though nothing was ever agreed upon, and Blanding remained employed pursuant to the terms of the Agreement.

15. Throughout 2025, Blanding, in his capacity as an employee, continued to write code for RETVRN; however, he also continued to withhold crucial code from RETVRN and place it on his personal computer, thus, stealing RETVRN's time and property and depriving RETVRN of the benefit of the Agreement.

16. In November 2025, after CEO Stumphauzer had tasked Blanding with focusing on specific areas of development and refinement, Blanding again demanded 30 percent of RETVRN. Initially, unaware that Blanding was stealing, CEO Stumphauzer tried to reach a compromise with Blanding—but the negotiations were short-lived and fruitless. In the wake of the failed negotiations, Blanding threatened to take RETVRN's code in order to form his own company, erroneously claiming that he owned the code as well as other related intellectual property.

17. However, given that the code was written and developed exclusively for RETVRN, in the scope and course of Blanding's employment with RETVRN, RETVRN, not Blanding, is the rightful owner of the code and all other intellectual property related to *SHIFT* and ESC. *See* **Exhibit A**.

18. Subsequently, in late 2025, CEO Stumphauzer became aware of and confirmed Blanding's misconduct—namely, that Blanding had been withholding code since approximately February 2025.

19. In December 2025, RETVRN formally demanded that Blanding return, via upload, intellectual property related to *SHIFT* and ESC projects, including the most up to date copies of all repos, branches, local commits, build scripts, signing keys (if any), CI configs, documentation, credentials, and all other applicable intellectual property developed for RETVRN. **Exhibit B.**

20. Blanding expressly rejected RETVRN's demand, continuing to insist (incorrectly) that the code is his property; thus, RETVRN has not received from Blanding any of the code and/or other intellectual property that Blanding unlawfully withheld.

21. To date, RETVRN has paid Blanding all monies due, a sum in excess of $110,000.00, and provided him with stock options; therefore, RETVRN has performed fully under the terms of the Agreement.

22. Blanding's conduct has forced RETVRN to delay the release of ESC, damaging its reputation and good will; moreover, RETVRN has had to retain legal counsel to prosecute this action causing RETVRN to incur costs and fees.

23. Thus far, RETVRN as incurred the following damages, among others, as a direct and proximate result of Blanding's conduct: (1) Initial

development for withheld code: **$110,000.00**; (2) Re-creation costs for withheld code (i.e., new developer salary): **$60,000.00**; (3) Software refunds: **$20,000.00**; and (4) Decline in sales due to customer complaints: **$30,000.00**. Additionally, RETVRN's enterprise value has been damaged in an amount up to **$2.5 million**. RETVRN therefore demands judgment in excess of $**5 million**.

**<u>FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT</u>**

24. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

25. RETVRN and Defendant Blanding entered into a valid employment Agreement, wherein RETVRN agreed to employ Blanding, pay him a salary, and provide stock options in exchange for his services as a code writer and developer.

26. RETVRN performed its obligations under the Agreement—specifically, by paying the required salary, approximately $110,000.00, and providing stock options, among other things.

27. Blanding materially breached the Agreement when he purposely withheld the very code that he was hired and employed to write and develop, thus depriving RETVRN the benefit of the bargain.

28. Blanding's conduct directly and proximately caused RETVRN damages, including economic damages, as set forth above, that exceed $75,000.00, as well as damages to RETVRN's reputation and good will, thus

affecting its livelihood.

29. WHEREFORE, RETVRN prays for judgment against Defendant Blanding as follows: (1) specific performance in the form of Blanding providing RETVRN with all code and intellectual property that was created pursuant to the Agreement for RETVRN's exclusive benefit; (2) alternatively, actual, compensatory, consequential, and all other allowable damages against Blanding in an amount in excess of $5 million, including the return of all monies ($110,000.00) and stocks; (3) pre- and post-judgment interest at the highest lawful rate; (4) the costs of this action; (5) attorney fees; and (6) any other relief the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (CONTRACT)

30. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

31. Every contract imposes an obligation of good faith and fair dealing between the parties in its performance and its enforcement; if the promise is not expressed by its terms in the contract, it will be implied.

32. An implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations and thus imposes upon the parties a duty of good faith.

33. Defendant Blanding breached the duty good faith and fair dealing

by performing in a manner that was unfaithful to the purpose of the contract. Specifically, his covert withholding of RETVRN's code, which he later attempted to use as leverage for a 30 percent share in the company. Such conduct was contrary to the spirit and purpose of the Agreement, and therefore, done in bad faith.

34. Blanding's conduct denied RETVRN of its reasonable and justified expectations and directly and proximately caused RETVRN damages, including economic damages that exceed $75,000.00, as well as damages to RETVRN's reputation and good will, thus affecting its livelihood.

35. WHEREFORE, RETVRN prays for judgment against Defendant Blanding as follows: (1) specific performance in the form of Blanding providing RETVRN with all code and intellectual property that was created pursuant to the Agreement for RETVRN's exclusive benefit; (2) alternatively, actual, compensatory, consequential, and all other allowable damages against Blanding in an amount considerably greater than $75,000.00, including the return of all monies and stocks; (3) pre- and post-judgment interest at the highest lawful rate; (4) the costs of this action; (5) attorney fees; and (6) any other relief the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (TORTIOUS BREACH)

36. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

37. As set forth above, there was a valid contract and that contract included an obligation of good faith and fair dealing between the parties.

38. In addition, a special element of reliance and/or a fiduciary duty existed between RETVRN and Defendant Blanding because Blanding was in a superior and/or trusted position—i.e., as a code writer and developer Blanding had technical knowledge and expertise that RETVRN itself did not possess, placing RETVRN in a position of trust vis-à-vis Defendant Blanding.

39. Blanding breached the duty of good faith and fair dealing when he exploited this asymmetry by surreptitiously withholding code in an attempt to gain financial leverage over RETVRN.

40. Blanding's conduct directly and proximately caused RETVRN damages, including economic damages that exceed $5 million, as well as damages to RETVRN's reputation and good will, thus affecting its livelihood.

41. WHEREFORE, RETVRN prays for judgment against Defendant Blanding as follows: (1) specific performance in the form of Blanding providing RETVRN with all code and intellectual property that was created pursuant to the Agreement for RETVRN's exclusive benefit; (2) alternatively, actual, compensatory, consequential, and all other allowable damages against Blanding in an amount considerably greater than $5 million, including the

return of all monies and stocks; (3) pre- and post-judgment interest at the highest lawful rate; (4) the costs of this action; (5) attorney fees; and (6) any other relief the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF – UNJUST ENRICHMENT

42. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

43. In the event no valid contract is found to exist between RETVRN and Defendant Blanding with regard to Blanding's employment, RETVRN has no adequate remedy at law.

44. Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another.

45. RETVRN provided Blanding with benefits.

46. Blanding knew of the benefits being conferred by RETVRN as a result of the parties' relationship.

47. Blanding also knew at the time that RETVRN expected to receive the code in exchange for the benefits conferred and that such an expectation was reasonable.

48. RETVRN has not received the code, though Blanding has accepted and retained his benefits.

49. Accordingly, it would be inequitable for Blanding to retain the aforementioned code and/or other intellectual property.

50. WHEREFORE, RETVRN prays for judgment against Defendant Blanding as follows: (1) that Blanding provide RETVRN with all code and intellectual property that he has unjustly retained; (2) alternatively, actual, compensatory, consequential, and all other allowable damages against Blanding in an amount considerably greater than $5 million, including the return of all monies and stocks; (3) pre- and post-judgment interest at the highest lawful rate; (4) the costs of this action; (5) attorney fees; and (6) any other relief the Court deems just and equitable.

**FIFTH CLAIM FOR RELIEF – CONVERSION**

51. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

52. RETVRN hired and employed Defendant Blanding for the purpose of writing and developing code related to *SHIFT* and ESC. Because Blanding wrote the subject code in his capacity as a RETVRN employee, RETVRN, not Blanding, is the rightful owner of the code and other related intellectual property, and therefore RETVRN has a lawful right to possess it.

53. Blanding exercised improper dominion and control over the code by withholding it from RETVRN and placing it on his personal laptop rather than the corporate Gitbhub.

54. RETVRN has demanded the return of the code and all other intellectual property, but Blanding has refused to return any of it.

55. Blanding's conduct directly and proximately caused RETVRN damages, including economic damages that exceed $5 million, as well as damages to RETVRN's reputation and good will, thus affecting its livelihood.

56. WHEREFORE, RETVRN prays for judgment against Defendant Blanding as follows: (1) that Blanding provide RETVRN with all code and intellectual property that he has in possession, custody, or control; (2) alternatively, actual, compensatory, consequential, and all other allowable damages, as set forth above, against Blanding in an amount considerably greater than $5 million, including the return of all monies and stocks, as well as the fair market value of RETURN's intellectual property; (3) pre- and post-judgment interest at the highest lawful rate; (4) the costs of this action; (5) attorney fees; and (6) any other relief the Court deems just and equitable.

## SIXTH CLAIM FOR RELIEF – BREACH OF FIDUCIARY DUTY

57. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

58. A special element of reliance and/or a fiduciary duty existed between RETVRN and Defendant Blanding because Blanding was in a position of trust—in particular, he was employed as RETVRN's primary code writer and developer. As such, Blanding had technical knowledge and expertise that RETVRN and its lay personnel did not possess, placing RETVRN in a position of having to rely on Blanding's expertise. Moreover, Blanding was privy to

trade secrets and proprietary information belonging to RETVRN.

59. Blanding breached this fiduciary duty when he exploited the asymmetry of his relationship with RETVRN by surreptitiously withholding code in an attempt to gain financial leverage over RETVRN.

60. Blanding's conduct directly and proximately caused RETVRN damages, including economic damages that exceed $5 million, as well as damages to RETVRN's reputation and good will, thus affecting its livelihood.

61. WHEREFORE, RETVRN prays for judgment against Defendant Blanding as follows: (1) that Blanding provide RETVRN with all code and intellectual property that he has in possession, custody, or control; (2) alternatively, actual, compensatory, consequential, and all other allowable damages against Blanding in an amount considerably greater than $5 million, including the return of all monies and stocks; (3) pre- and post-judgment interest at the highest lawful rate; (4) the costs of this action; (5) attorney fees; and (6) any other relief the Court deems just and equitable.

## SEVENTH CLAIM FOR RELIEF – PRELIMINARY AND PERMANENT INJUNCTION

62. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

63. Additionally, RETVRN will suffer immediate and irreparable injury, for which money damages would be an inadequate remedy, unless an injunction issues requiring Blanding to return to Plaintiff all passwords, code,

and other information related to the *SHIFT* and ESC projects and enjoining Blanding from using in any manner RETVRN's confidential and proprietary intellectual property, including the processes associated with *SHIFT* and ESC.

64. Because RETVRN is the lawful owner the aforementioned code/intellectual property, as Blanding was RETVRN's employee when the code was developed, RETVRN's likelihood of success on the merits is highly probable. The balance of equities and hardships, moreover, favors RETVRN, as Blanding, to this point, has used the code only as a tool to extort RETVRN by demanding that RETVRN provide him with additional compensation and modify the terms of his employment agreement. Public interest is also served by an injunction because protecting intellectual property rights preserves societal norms and encourages innovation, rather than plagiarism.

65. WHEREFORE, Plaintiff RETVRN prays for a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 ordering Blanding to return to Plaintiff all passwords, code, and other information related to the *SHIFT* and ESC projects and enjoining Blanding from using, in any manner and for any purpose, RETVRN's confidential and proprietary intellectual property or any derivatives therefrom, including the processes associated with *SHIFT* and ESC.

## EIGHTH CLAIM FOR RELIEF – DECLARATORY RELIEF

66. Plaintiff incorporates all previous paragraphs as though fully set

forth herein.

67. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

68. In 2022, RETVRN's CEO, Nicholas Stumphauzer, invented the concepts for *SHIFT* and ESC as well as the processes associated therewith.

69. Later, RETVRN hired Defendant Blanding, via the written employment agreement referenced *supra*, to write code for the *SHIFT* and ESC projects for RETVRN's exclusive use and benefit.

70. By virtue of that employer-employee relationship, all of Blanding's work-product and developments made within the scope of that relationship remain the sole and exclusive property of RETVRN.

71. Blanding retained and withheld RETVRN's code/intellectual property and now (illegitimately) claims an ownership right thereto.

72. This Court has jurisdiction to declare rights and other equitable legal relations between parties and the existence or non- existence of any power, privilege or right, whether or not further relief is or could be sought. Defendant Blanding's assertion of ownership is untenable given the existence of the employer-employee relationship as between RETVRN and Blanding. Declaratory relief is an appropriate and proper means to determine the existence and scope of that employer-employee relationship as well as the ownership of the code/intellectual property at controversy herein.

73. WHEREFORE, Plaintiff prays for a declaratory judgment as follows: (1) that RETVRN and CEO Stumphauzer invented the concepts for *SHIFT* and ESC; (2) that Defendant Blanding was an employee of RETVRN and that all work done for the *SHIFT* and ESC projects occurred within the scope of that employer-employee relationship; (3) that because all of Blanding's work occurred within the scope of that relationship, he has no ownership interest in any of his work product related to *SHIFT* or ESC, nor does Blanding have any kind of license related thereto; (4) all code, intellectual property, and processes related to *SHIFT* and ESC that flow from Defendant Blanding's work as an employee are the sole and exclusive property of RETVRN, which Blanding is prohibited from using for any purpose whatsoever; and (5) the costs of this action, attorney fees, and for any other relief the Court deems just and equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: March 20, 2026

PASQUALE LAW FIRM

*/s/ Justin Pasquale*
JUSTIN PASQUALE, ESQ.
110 N. Ankeny Blvd., Suite 200
Ankeny, IA 50023
Tel: (515) 957-7175
justin@pasqualelaw.com
*Attorneys for Plaintiff*